**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EDSON R. ARNEAULT, et al.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 11-95 ERIE** |
| | ) | |
| **v.** | ) | **Magistrate Judge Baxter** |
| | ) | |
| **KEVIN O'TOOLE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION[1]

**M.J. Susan Paradise Baxter**

Presently pending in the above-captioned matter are the requests for attorneys' fees and costs of certain Defendants who prevailed, in part, in the underlying litigation. The matter was referred to a Special Master, who issued a Report and Recommendation as to an appropriate fee award. Plaintiffs and the prevailing Defendants have each raised various objections to the Report and Recommendation. For the reasons that follow, the Court will adopt the Special Master's recommendations in part and will award fees and costs, as set forth herein.

## I. INTRODUCTION

This litigation was commenced in 2011 by Plaintiffs Edson R. Arneault ("Arneault") and Gregory Rubino ("Rubino"), who sought redress against twenty-six (26) separate Defendants for alleged civil rights violations and related wrongdoing in connection with the licensing and operation of Presque Isles Downs, a casino in Erie, Pennsylvania. Among the named Defendants were Nicholas C. Scott and Scott's Bayfront Development, Inc. (collectively, the "Scott

---

[1] In accordance with the provisions of 28 U.S.C. §636(c)(1), the parties to this action voluntarily consented to having a United States Magistrate Judge exercise jurisdiction over this matter. (*See* ECF Nos. 123, 124, 125, 126, 127, 128, 129, and 130.)

Defendants") and their attorney, Leonard Ambrose ("Ambrose"). In their operative pleading,

Plaintiffs asserted eleven causes of action, including claims against Ambrose and the Scott

Defendants for conspiracy to violate Plaintiffs' civil rights (Amended Complaint Count X) and

defamation (Amended Complaint Count XI).

On March 28, 2012, the Honorable Sean J. McLaughlin dismissed all of Plaintiffs'

federal civil rights claims with prejudice, including the conspiracy claim at Count X, for failure

to state a claim upon which relief could be granted. The court declined to exercise supplemental

jurisdiction over the remaining state law claims, including the defamation claim at Count XI.

Accordingly, those claims were dismissed without prejudice to Plaintiffs' right to pursue them in

state court. *See generally Arneault v. O'Toole,* 864 F. Supp. 2d 361 (W.D. Pa. 2012).

Thereafter, all of the named Defendants – including Ambrose and the Scott Defendants -- sought

attorneys' fees. (ECF Nos. 86, 87, 89, 90, 91, 93 and 94.)

Following Judge McLaughlin's resignation from the bench, the case was transferred to

the Honorable Arthur Schwab and, subsequently, to the undersigned by consent of the parties. In

the meantime, Judge Schwab had referred the Defendants' motions for attorneys' fees to Special

Master Arthur H. Stroyd, Jr. (ECF No. 120). By Order dated December 11, 2013 (ECF No.

142), this Court adopted Special Master Stroyd's recommendation that the motions for counsel

fees be granted (ECF No. 131) in amounts that would be determined through subsequent

proceedings.

Certain of the Defendants subsequently settled their claims against Plaintiffs for counsel

fees and, thereafter, Special Master Stroyd filed a Report and Recommendation addressing the

remaining claims (ECF No. 207). As of this writing, the only outstanding claims for attorneys'

fees are those being asserted by Ambrose and the Scott Defendants. Ambrose seeks to recover $87,057.47 in fees and costs,[2] while the Scott Defendants seek to recover $79,726.98.

In his Report and Recommendation, Mr. Stroyd recommended that Ambrose be awarded $41,901.22 in counsel fees and $1,408.47 in costs.[3] (R&R ¶¶ 119 and 129, ECF No. 207.) As for the Scott Defendants, he recommended an aggregate award of $48,410.00.[4] (*Id.* ¶155.) In arriving at these figures, Mr. Stroyd made the following findings and conclusion, either explicitly or implicitly:

- Ambrose and the Scott Defendants are "prevailing parties" – and therefore eligible for a fee award -- as to the §1983 conspiracy claim at Count X of the Amended Complaint, but they are not "prevailing parties" as to the defamation claim at Count XI (R&R ¶¶ 24-26);

- the relevant community for purposes of determining a reasonable billing rate is Erie/Northwestern Pennsylvania (*id*. at ¶¶ 54, 104, 134);

- based on the nature of this litigation and the respective credentials of the prevailing Defendants' counsel, an hourly rate of between $150 and $350 would be reasonable for the Erie/Northwest Pennsylvania legal market (*id*. at ¶¶ 59, 106);

- the appropriate lodestar figure for Ambrose's counsel fees was $83,802.45 (*id*. at ¶118);

- the lodestar should be reduced by fifty percent (50%) to account for the fact that approximately one-half of the time Ambrose's counsel spent defending this lawsuit would have been incurred even in the absence of the frivolous claim at Count X (*id*. at ¶128);

- the appropriate lodestar figure for the Scott Defendants' counsel fees was $96,820.00 (*id*. at ¶153); and

- the lodestar should be reduced by fifty percent (50%) to account for the fact that approximately one-half of the time the Scott Defendants' counsel spent defending this

---

[2] Ambrose's petition originally sought $94,076.44 in fees and costs. He has since modified his request.

[3] Neither side appears to object to the Special Master's recommendation that Ambrose be awarded $1,408.47 in costs. Accordingly, the Court will adopt that recommendation without further discussion.

[4] This figure is based on a percentage of the aggregate amounts billed to the Scott Defendants by their legal counsel. Because those aggregate amounts included both costs and fees, it appears that a certain, unspecified portion of the recommended award is attributable to costs.

lawsuit would have been incurred even in the absence of the frivolous claim at Count X (*id*. at ¶154).

Objections to the Report and Recommendation have been filed by the Scott Defendants, Plaintiffs, and Ambrose.  (*See* ECF Nos. 210, 212, and 213, respectively.)  The parties have also filed their responses in opposition to, and in support of, the various objections.  (See ECF Nos. 214, 215, 216, 217, 220.)  As a result, the relevant issues have been sufficiently joined and are ripe for resolution.

## II.  <u>STANDARD OF REVIEW</u>

A District Court reviews de novo the factual findings and legal conclusions in a Special Master's Report and Recommendation.  *See* Fed. R. Civ. P. 53(f)(3)("The court must decide de novo all objections to findings of fact made or recommended by a master" unless the parties stipulate, with court approval, that findings will be reviewed for clear error or will be final.); Fed. R. Civ. P. 53(f)(4)("The court must decide de novo all objections to conclusions of law made or recommended by a master.").  In acting on the Special Master's Report and Recommendation, "the court...may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the Master with instructions."   Fed. R. Civ. P. 53(f)(1).  *See also Koninklijke Philips Elecs. N.V. v. ZOLL Lifecor Corp*., No. 12-1369, 2016 WL 2983654, at *2 (W.D. Pa. May 24, 2016) (citing Fed. R. Civ. P. 53(f)).

## III.  <u>DISCUSSION</u>

The pending fee requests find their genesis in 42 U.S.C. §1988, which authorizes the District Court to award "a reasonable attorney's fee as part of the costs" to the prevailing party in a §1983 lawsuit.  *See* 42 U.S.C. §1988(b).  When awarding attorney's fees and costs under Section 1988, courts within the Third Circuit use the "lodestar" method.  *See Maldonado v.*

*Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).  The first step in this process is to calculate "the product of the hours reasonably expended and the applicable hourly rate for the legal services." *Pub. Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir.1995) (citing *Hensley*, 461 U.S. at 433).  The "party seeking attorney fees bears the ultimate burden of showing that its requested hourly rates and the hours it claims are reasonable." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005) (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir.1990)).  To satisfy this burden, the party seeking fees is initially required to submit evidence supporting the hours worked and the rates claimed.  *Id*.  To the extent it seeks to challenge the fees sought, "the opposing party must then object 'with sufficient specificity' to the request." *Id*. (quoting *Rode*, (892 F.2d at 1183)).

"A District Court has substantial discretion in determining what constitutes a reasonable rate and reasonable hours, but once the lodestar is determined, it is presumed to be the reasonable fee." *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001) (citing *Rode,* 892 F.2d at 1183). "Following a determination of the lodestar, either party may seek adjustment.  If that party meets the burden of proving that an adjustment is appropriate, the lodestar amount may be increased or reduced at the discretion of the District Court." *Id.* (citing *Rode,* 892 F.2d at 1183).

While counsel fees may be awarded to a prevailing defendant in a civil rights action, any such award must be related to "costs that the defendant would not have incurred but for the frivolous claims." *Fox v. Vice*, 563 U.S. 826, 829 (2011).  A court must therefore determine "whether the costs would have been incurred in the absence of the frivolous allegation." *Id*. at 838.

A.  Plaintiffs' Preliminary Objections

   *1.  Ex parte Communications*

       As a preliminary matter, the Court will consider Plaintiffs' objection to certain ex parte

communication that the Special Master had in connection with these proceedings.  In particular,

Plaintiffs note that Mr. Stroyd communicated with this Court once when he requested that the

MTR Defendants submit their invoices for ex parte, in camera review (Text Order dated 5/22/14)

and again when he sought an extension of his deadline for filing the Report and

Recommendation (Text Order dated 5/29/14).  Plaintiffs further note that Mr. Stroyd had

additional, unspecified communications with the Court, as reflected on his invoice.  Finally,

Plaintiffs note that the MTR Defendants submitted invoices to the Special Master on May 22,

2014 but failed to copy Plaintiffs on the accompanying correspondence.  Plaintiffs insist that

these various communications were "wholly inappropriate" and constitute error on the part of the

Special Master.

       Pursuant to Federal Rule of Civil Procedure 53, a master "must not have a relationship to

the parties, attorneys, action, or court that would require disqualification of a judge under 28

U.S.C. §455, unless the parties, with the court's approval, consent to the appointment after the

master discloses any potential grounds for disqualification."  Fed. R. Civ. P. 53(a)(2).  To that

end, a master – prior to appointment -- must submit an affidavit disclosing any basis that may

exists for disqualification under §455.[5]  Fed. R. Civ. P. 53(b)(3)(A).  In this case, Mr. Stroyd

_____

[5] Pursuant to 28 U.S.C. §455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might
reasonably be questioned."  28 U.S.C. §455(a).  Under subsection (b), a judge "shall also disqualify himself" in the
following circumstances:

       (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed
       evidentiary facts concerning the proceeding;

complied with the strictures of Rule 53 and 28 U.S.C. §455 by filing an affidavit attesting to the fact that he had no personal bias or prejudice in this matter; no personal knowledge of disputed evidentiary facts; no prior attorney-client relationship with any of the parties herein; no economic or other interest in the litigation, and no other disqualifying conflicts. (*See* ECF No. 119.)

Insofar as this Court's communications with Mr. Stroyd are concerned, Plaintiffs have failed to demonstrate any impropriety that would warrant the removal of Mr. Stroyd, a wholesale rejection of his Report & Recommendation, or a recusal of the undersigned. Notably, Plaintiffs have not raised any argument for disqualification under § 455. Instead, Plaintiffs appear to argue that Mr. Stroyd's communications violated Federal Rule of Civil Procedure 53. This argument is baseless.

---

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

    (i) Is a party to the proceeding, or an officer, director, or trustee of a party;

    (ii) Is acting as a lawyer in the proceeding;

    (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

    (iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

*Id.* at §455(b). Grounds for disqualification under §455(a) are waivable, while those under §455(b) are not. *See id.* at §455(e).

Pursuant to Rule 53(b)(2)(B), an order appointing a master must indicate, among other things, "the circumstances, if any, in which the master may communicate ex parte with the court or a party." Fed. R. Civ. P. 53(b)(2)(B). The Advisory Committee notes to the 2003 amendments recognize that ex parte communications between a master and the court present "troubling questions." Fed. R. Civ. P. 53, Advisory Committee Notes (2003 Amendments). While observing that "[o]rdinarily the order [appointing the master] should prohibit such communications," id., the Advisory Committee also recognized that "there may be circumstances in which the master's role is enhanced by the opportunity for ex part communications with the court." *Id.* Ultimately, Rule 53 "does not directly regulate these matters" and "requires only that the court exercise its discretion and address the topic in the order of appointment." *Id*.

In this case, Judge Schwab's order appointing Mr. Stroyd expressly stated that "the Special Master may communicate with the Court ex parte on all matters as to which the Special Master has been empowered to act." (Order dated 9/6/13, ECF No. 120.) All of the communications between Mr. Stroyd and the undersigned pertained directly to matters within the scope of Mr. Stroyd's appointment. This Court has not obtained any extrajudicial information concerning the parties or this litigation that would warrant disqualification of the undersigned pursuant to §455. Moreover, the Court's review is plenary as to both the factual and the legal determinations set forth in the Special Master's Report and Recommendation. Consequently, the Court finds no merit to Plaintiff's objection insofar as it is premised on communications that may have occurred between Mr. Stroyd and this Court.

Similarly, to the extent the MTR Defendants communicated with Mr. Stroyd on an ex parte basis in connection with submitting their billing records under seal, the Court is not persuaded that this constituted grounds for the removal of Mr. Stroyd under either §455 or Rule

53.  The Advisory Committee's notes acknowledge that, while ex parte communications between a master and the parties should generally be discouraged or prohibited, they "may prove useful ..., as with in camera review of documents to resolve privilege questions."  Fed. R. Civ. P. 53 (Advisory Committee Notes)(2003 Amendments).  This is precisely the type of ex parte communication which occurred in this case.  In any event, however, the point is now moot, as Plaintiffs have reached a settlement with the MTR Defendants relative to their request for counsel fees.

2.  *The Special Master's Finding that Plaintiffs' Claims Were Frivolous*

Plaintiffs also object to Mr. Stroyd's determination that the §1983 claims asserted against Ambrose and the Scott Defendants were frivolous.  This particular finding was set forth in Mr. Stroyd's prior Report and Recommendation of October 4, 2013 (ECF No. 131).  This Court adopted that R&R in its Order of December 11, 2013 (ECF No. 142), wherein the Court granted the Defendants' motions for attorney fees in amounts yet to be determined.

To the extent Plaintiffs are seeking to relitigate an issue in this case that was previously decided, their objection is in the nature of a motion for reconsideration.  While district courts have the inherent power to reconsider interlocutory decisions, "'[c]ourts tend to grant motions for reconsideration sparingly and only upon the grounds traditionally available under Fed.R.Civ.P. 59(e).'"  *Deeters v. Phelan Hallinan & Schmieg, LLP*, Civil Action No. 3:11–252, 2013 WL 6524625, at *2 (W.D. Pa.  Dec.12, 2013) (quoting *A & H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc.*, CIV. A. 94–7408, 2001 WL 881718, at *1 (E.D. Pa. May 1, 2001)) (alteration in the original).  Reconsideration is generally appropriate where:  (1) there has been an intervening change in the controlling law; (2) there is new evidence that was not previously available; and (3) there is a need to correct a clear error of law or prevent manifest injustice.  *See*

*Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999);

*Deeters*, 2013 WL 6524625, at \*2.  Because courts have a strong interest in the finality of their

rulings, a motion for reconsideration should not be used as a vehicle for merely expressing

dissatisfaction with a prior ruling.  *Deeters, supra*, at \*2; *D'Angio v. Borough of Nescopeck*, 56

F. Supp. 2d 502, 504 (M.D. Pa. 1999).  Nor should a motion for reconsideration be used "as a

means to reargue matters already argued and disposed of or as an attempt to relitigate a point of

disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F. Supp. 2d

588, 606 (M.D. Pa. 2002). *See also Deeters*, supra, at \*2.

Plaintiffs have failed to establish that any of the circumstances warranting

reconsideration are present here.  Instead, they proffer only their own personal survey of the case

law to support the unremarkable proposition that awards of counsel fees to a prevailing

defendant in a civil rights case is the "exception, rather than the rule."  (Pls.' Objections at ¶186,

ECF No. 212.)

Upon consideration of Plaintiffs' arguments, the Court remains unpersuaded that its prior

ruling was clearly erroneous or will result in any manifest injustice to Plaintiffs.  Consequently,

Plaintiffs' objection is overruled.

B.  Defendant Ambrose's Fee Petition

Special Master Stroyd determined that the appropriate lodestar amount for Ambrose's fee

request was $83,802.45.  (R&R ¶118.)  Mr. Stroyd arrived at this figure by making the following

determinations as to the reasonable hourly rates for, and reasonable number of hours expended

by, each of Ambrose's attorneys:

| Attorney | Hours | Rate | Totals |
|---|---|---|---|
| William Pietragallo, II | 35.24 | $350.00 | $12,334.00 |
| Robert R. Leight | 38.1 | $232.00 | $8,877.30 |
| Jeanette H. Ho | 250.2 | $186.00 | $46,537.20 |
| Peter S. Wolff | 85.85 | $186.00 | $16,053.95 |
| **TOTAL** | | | **$83,802.45** |

After arriving at this lodestar figure, Special Master Stroyd concluded that a fifty percent (50%) reduction of the lodestar was appropriate on the theory that approximately one-half of the time expended by Ambrose's counsel defending this lawsuit would have been spent even in the absence of the frivolous §1983 claim. Based on these calculations, Mr. Stroyd recommended that Ambrose be awarded $41,901.22 in counsel fees.

Both Ambrose and Plaintiffs object to various aspects of the Special Master's recommendations. Ambrose contends that Mr. Stroyd erred by: (a) improperly reducing the hourly rates of his attorneys; (b) improperly awarding only half of the fees that Ambrose incurred in connection with the Plaintiffs' appeal; (c) improperly awarding only half of the fees that Ambrose incurred in connection with litigating the instant fee petition; and (d) failing to reimburse Ambrose for all of the reasonable fees that were generated in connection with obtaining a dismissal of the §1983 claim at the District Court level. Plaintiffs, on the other hand, contend that Special Master Stroyd erred by: (i) awarding too high an hourly fee to Ambrose's lead attorney; (ii) awarding fees related to Ambrose's "unnecessary" participation in the appellate proceedings; (iii) failing to exclude hours billed in connection with "unnecessary" fact-gathering work; (iv) failing to otherwise properly limit the fee award in accordance with *Fox v. Vice*; and (v) failing to reduce the lodestar based on the real "threat of injury" that Ambrose's conduct posed to Plaintiffs. As discussed below, certain of the parties' objections have merit.

*1. Hours Reasonably Expended By Counsel*

In arriving at his recommended fee award, Special Master Stroyd examined the billing records of Ambrose's attorneys for evidence of excessive, redundant, or otherwise unnecessary charges. Mr. Stroyd concluded that counsels' entries generally reflected a reasonable expenditure of time.[6] As set forth above, Mr. Stroyd found that the following numbers of hours were reasonably expended by Ambrose's attorneys: 35.24 hours for Mr. Pietragallo; 38.1 hours for Mr. Leight; 250.2 hours for Ms. Ho, and 85.85 hours for Mr. Wolff. These figures encompass hours that were charged in defense of Ambrose at both the district and appellate court levels, as well as time charged by counsel in connection with the instant fee petition.

a) HOURS SPENT WORKING ON PLAINTIFFS' APPEAL

Plaintiffs object that the lodestar figure should not include any time that Ambrose's attorneys billed in connection with their participation in appellate proceedings because, in Plaintiffs' opinion, Ambrose's participation was unnecessary. This Court does not agree.

First, the issues that Plaintiffs raised on appeal directly implicated Ambrose's legal interests. Plaintiffs argued, in part, that the District Court had erred when it determined that Arneault did not plead viable due process or First Amendment retaliation claims. These issues directly impacted Ambrose, as the alleged due process and First Amendment violations were the underpinning for Arneault's conspiracy claim against Ambrose in Count X. Indeed, Plaintiffs expressly argued to the court of appeals that, because the District Court had erred in dismissing Counts I through III, and because the District Court had dismissed Count X (along with other

---

[6] There is one minor exception: Special Master Stroyd opined that 8.2 hours of Ms. Ho's work in connection with the appellate proceedings should be excluded as unnecessary and duplicative. (R&R ¶¶ 17, 118 and n.17.) Ambrose does not challenge this particular adjustment, and the Court will therefore incorporate it into the relevant lodestar calculation.

counts) on the basis that it was dependent on Counts I through III, the District Court's dismissal of Count X should be reversed as well. (*See* Pls.' Principal Appellate Br. at 80.)

Plaintiffs also argued on appeal that the District Court had erred in refusing to let them amend their complaint. Had this argument been accepted by the Court of Appeals, Plaintiffs would have been able to reassert their conspiracy claims against Ambrose and the other named Defendants, thereby prolonging the litigation. Ambrose therefore had an incentive to demonstrate – on as many bases as possible -- that the conspiracy claims suffered from deficiencies that could not be remedied by way of a curative amendment. To that end, he quite reasonably attempted to persuade the Court of Appeals that: the Plaintiffs' Section 1983 conspiracy claims were barred by the statute of limitations; Rubino had waived any attempt to contest this defense by failing to raise a challenge on appeal; Plaintiffs did not allege facts sufficient to support a plausible conspiracy between Ambrose and the government defendants; and any attempt to replead Count X would have been futile. Plaintiffs' suggestion that Ambrose's appellate arguments were unnecessary to a resolution of the appeal is belied by the fact that they fully engaged his arguments in their reply brief to the Court of Appeals.[7]

Plaintiffs nevertheless insist that Ambrose acted unreasonably by independently litigating the foregoing issues through his own counsel, as opposed to simply relying on the government Defendants' counsel to protect his rights. Again, the Court is not persuaded. The government Defendants' attorneys did not represent Ambrose for purposes of the appeal, and the fact that there was a joint defense agreement in place did not guarantee that the appellate court would

---

[7] Specifically, Plaintiffs took the position that: (i) the manner in which the appellate issues were framed did not constitute a waiver of Plaintiffs' right to challenge the dismissal of the conspiracy claim at Count X (Reply Br. at 21-22); (ii) the conspiracy claim at Count X was not barred by the applicable statute of limitations (Reply Br. at 23-28); and (iii) the District Court abused its discretion in finding that further amendment would be futile because Plaintiffs could "allege with greater particularity the nature, structure, and extent of the conspiracies alleged in Counts VII and X." (Reply Br. at 29.)

have recognized the government Defendants' counsel as authorized to speak on Ambrose's behalf. Furthermore, Ambrose asserted grounds for an affirmance of the District Court's dismissal of Count X that were separate and distinct from the arguments raised by the government Defendants. In sum, Ambrose's rights could have been prejudiced had he not participated in the appeal and, consequently, this Court agrees with Special Master Stroyd that the time billed for this aspect of the litigation was generally reasonable, appropriate, and compensable.

b) APPLICATION OF *FOX V. VICE*

As a related matter, the Court must consider whether hours that were otherwise reasonably expended by Ambrose's counsel are nevertheless non-compensable pursuant to the Supreme Court's ruling in *Fox v. Vice,* 563 U.S. 826 (2011).[8]  In accordance with *Fox,* any award must be related to "costs that the defendant would not have incurred but for the frivolous claims." 563 U.S. at 829. The dispositive inquiry is "whether the costs would have been incurred in the absence of the frivolous allegation." *Id.* at 838.

In this case, the Special Master applied the rule of *Fox* by first calculating the lodestar amount and then applying an across-the-board, fifty percent (50%) reduction of that amount under the theory that half of the time billed by Ambrose's attorneys would not have been incurred in the absence of the frivolous conspiracy claim. Both Plaintiffs and Ambrose object to Special Master Stroyd's application of *Fox* in this manner. Ambrose contends that Plaintiffs should pay the entirety of the $22,417.50 in fees he incurred relative to Plaintiffs' appeal[9] as well

---

[8] Special Master Stroyd treated the fee allocation issue as grounds for adjustment to the lodestar figure. Because *Fox* addresses the question of whether fees are properly awardable in the first place, the Court will address the allocation issue as part of its initial lodestar calculation.

[9] Ambrose calculates these fees as follows:

the entirety of the $13,700 in fees he incurred in litigating the instant fee petition.[10]  As to the

remainder of his fee request, Ambrose argues that the 50% reduction produced an undeserved

windfall to Plaintiffs because he had already limited his fee petition in accordance with *Fox*.  On

the other hand, Plaintiffs insist that the Special Master's recommended fee award improperly

includes charges that Ambrose would have necessarily incurred in defense of the nonfrivolous

defamation claim.

As an initial point, the Court finds Ambrose's objections meritorious insofar as they

relate to the fees he incurred in connection with Plaintiffs' appeal and his litigation of the instant

fee petition.  Absent the §1983 claim at Count X, Ambrose would not have incurred these legal

charges.  Accordingly, all of the hours reasonably billed for those activities should be included as

part of the lodestar calculation.

A closer question is presented with respect to hours that were billed in connection with

Ambrose's defense of Count X at the District Court level.  To reiterate, "the dispositive

question" is "whether the costs would have been incurred in the absence of the frivolous

allegation." *Fox*, 563 U.S. at 838.  Ambrose represents that he reasonably incurred $49,461.50

| Attorney | Hours | Rate | Totals |
|---|---|---|---|
| William Pietragallo, II | 2.45 | $350.00 | $857.50 |
| Robert R. Leight | 1.6 | $250.00 | $400.00 |
| Jeanette H. Ho | 46.9 | $200.00 | $9,380.00 |
| Peter S. Wolff | 58.9 | $200.00 | $11,780 |
| **TOTAL** | **109.85** | | **$22,417.50** |

[10] Ambrose calculates these fees as follows:

| Attorney | Hours | Rate | Totals |
|---|---|---|---|
| William Pietragallo, II | .5 | $350.00 | $175.00 |
| Robert R. Leight | .7 | $250.00 | $175.00 |
| Jeanette H. Ho | 64.9 | $200.00 | $12,980 |
| Peter S. Wolff | 2.2 | $200.00 | $440.00 |
| **TOTAL** | **68.3** | | **$13,770.00** |

in legal fees in connection with his defense of Count X prior to Plaintiffs' appeal.  These fees are

broken down as follows:[11]

| Attorney | Hours | Rate | Totals |
|---|---|---|---|
| William Pietragallo, II | 31.29 | $350.00 | $10,951.50 |
| Robert R. Leight | 32.2 | $250.00 | $8,050.00 |
| Jeanette H. Ho | 134.55 | $200.00 | $26,910.00 |
| Peter S. Wolff | 17.75 | $200.00 | $3,550.00 |
| **TOTAL** | **215.79** | | **$49,461.50** |

As to these charges, Ambrose contends that his fee petition complies with *Fox* because it:

(1) excluded work that was unrelated to the defense of the frivolous Section 1983 claims; (2)

excluded work that would have been performed if Plaintiffs had only brought the defamation

claim; and (3) included only half the hours attributable to activities that may have pertained to

both the §1983 claim at Count X and the defamation claim at Count XI.

Plaintiffs object that many of the time entries set forth in Ambrose's legal bills pertain to

work that counsel would necessarily have had to perform even if Plaintiffs had *only* asserted the

defamation claim.  As to these entries, Plaintiffs argue, it was not sufficient for Ambrose to

simply cut the number of hours in half.  Instead, Plaintiffs insist that the *entirety* of these entries

must be excluded from the fee calculation, pursuant to the rule of *Fox*.  In Plaintiffs' estimation,

Ambrose's fee petition includes 272.5 hours of non-compensable work, some of which was cut

in half by Ambrose, and some of which was not.  (*See* ECF No. 217 at p. 8; ECF No. 200 at pp.

2-6 and Ex. A.)

---

[11] In their response in opposition to Ambrose's fee petition (ECF No. 200), Plaintiffs argued that Ambrose could not recover fees incurred in connection with his counsels' review and analysis of the original and amended complaints, because this work would have been performed even in the absence of the §1983 claim at Count X.  (*See id.* at p. 6.) Ambrose conceded this point in his reply brief.  (*See* ECF No. 202 at p. 5.)  Accordingly, the chart does not include time that Ambrose's counsel spent reviewing and analyzing the pleadings in this case.

The parties' objections implicate the following questions: (i) whether a generalized "across-the-board" reduction of attorney hours can be an acceptable means of applying the rule of *Fox*, and (ii) if so, whether the Special Master properly applied such a reduction in this case.

The Court answers the first inquiry in the affirmative. As a general matter, the Court is not persuaded that *Fox* requires the type of line-item analysis proposed by Plaintiffs, nor is the Court convinced that *Fox* requires all of the challenged time entries to be excluded in their entirety. The Supreme Court expressly recognized in *Fox* that, while a fee applicant must submit appropriate documentation to meet his burden of establishing entitlement to an award, "trial courts need not, and indeed should not, become green-eyeshade accountants." 563 U.S. at 838. Rather, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Id*. To that end, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id*. Accordingly, with respect to time entries that could conceivably relate to both the frivolous claim at Count X and the nonfrivolous claim at Count XI, the Court concludes that it is acceptable under *Fox* to account for any additional costs that are solely and exclusively attributable to the frivolous claim by applying an appropriate across-the-board reduction to the number of hours that were otherwise reasonably billed.

The next question to be answered, then, is whether the Special Master correctly applied this principle when he applied an across-the-board fifty percent (50%) reduction to the lodestar figure. In this case, Special Master Stroyd based his fee allocation on his overall sense of the suit, as follows:

> In accordance with these teachings of Justice Kagan [in *Fox v. Vice*], Defendant
> Ambrose's counsel estimated that approximately 50% of the time that was spent
> in defending against the claims in this lawsuit would not have been spent in the
> absence of the frivolous claims in Count X (Doc. No. 197), and that calculation

conforms with the objective analysis of those time entries that has been
independently conducted at this time, in that approximately half of the fees
incurred in defending Defendant Ambrose would have been incurred in the
absence of the frivolous claims in Count X.

(R&R ¶128.)  Based on this reasoning, Mr. Stroyd first calculated a lodestar figure (*i.e.*,

$83,802.45), then proceeded to reduce Ambrose's lodestar fee by fifty percent, resulting in an

award of $41,901.22.

Ambrose contends that the Special Master erred in this regard.  According to Ambrose,

he never conceded that a general across-the-board reduction of 50% was appropriate; rather, he

simply recognized that, with respect to certain of the charges incurred at the District Court level,

it was appropriate to cut counsels' time entries in half in order to account for that portion of the

legal fees that would have been incurred even in the absence of the §1983 claim.  Because these

billing cuts were already figured into his fee petition, Ambrose argues that it was error for the

Special Master to apply an additional 50% reduction to the lodestar figure.

The Court agrees that the Special Master's recommendation improperly excludes certain

fees which Ambrose is entitled to recover.  For the reasons previously discussed, this Court is of

the view that Ambrose is entitled to recover all of the fees he reasonably incurred relative to the

appellate proceedings and all of the fees he incurred relative to the instant fee petition.  With

regard to the legal work performed at the District Court level in defense of Count X, the Court is

generally satisfied that Ambrose's fee petition sets forth, with sufficient accuracy, the number of

attorney hours that would not have been billed but for Plaintiffs' inclusion of the frivolous §1983

claim.[12]  Implicit in Ambrose's fee petition is the assumption that, with regard to tasks that

involved legal work on both Counts X and XI, the inclusion of the §1983 claim essentially

doubled the amount of work that counsel had to perform.  Based on this Court's review of the

---

[12] One exception, as discussed herein, pertains to fact-gathering work, which will be excluded from the Court's
lodestar calculation.

record and its sense of the underlying litigation, the Court finds that this is a reasonable estimate and an acceptable method of applying the rule of *Fox*.

In arguing to the contrary, Plaintiffs basically assume that Ambrose's defense of the §1983 claim was entirely coextensive with his defense of the defamation claim – that is, any work performed in defense of Count X would necessarily have been performed to the same extent in defense of Count XI. The Court is not convinced that this is a fair assumption. Although the two claims were factually related, they were not identical. Indeed, it could reasonably be argued that the presence of the federal conspiracy claim significantly complicated Ambrose's defense insofar as the conspiracy claim premised his liability on actions allegedly taken in concert with various government officials. The elements of a defamation claim, of course, differ substantially from the elements of a §1983 conspiracy claim, the essence of which is an agreement to deprive a person of federally protected rights.[13] In defending Arneault's defamation claim, Ambrose's chief argument was that he never made any defamatory statements about Arneault. By contrast, Ambrose defended Arneault's §1983 conspiracy claim by arguing that Arneault had failed to allege the requisite predicate constitutional violations under First Amendment, due process, and/or equal protection theories. In defending the defamation claim brought by Rubino, Ambrose argued that the challenged statements were privileged, that he was immune under the *Noerr-Pennington* doctrine, and that the defamation claim was time-barred. To a limited extent, these defenses – most notably *Noerr-Pennington* immunity -- overlapped with Ambrose's defenses on the §1983 claim. However, Ambrose also defended Rubino's

---

[13] To prove defamation, the plaintiff must establish: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the recipient's understanding of its defamatory meaning; (5) the recipient's understanding of the statement as it was intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. *See* 42 Pa. Const. Stat. Ann. §8343(a). By contrast, "[i]n order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right. . . ." *Watson v. Sec'y Pennsylvania Dep't of Corr.*, 436 F. App'x 131, 137 (3d Cir. 2011) (citation omitted). *See also Alfred v. New Jersey*, No. 13-0332 (RBK) (AMD), 2016 WL 6136576, at *6 (D.N.J. Oct. 20, 2016).

§1983 claim by arguing that there were no allegations in Plaintiffs' pleading to support a plausible conspiracy. While Ambrose also argued a statute of limitations defense relative to the §1983 claim, the federal rules of law governing this defense differ somewhat from the state rules of law that govern the statute-of-limitations issue on a defamation claim.

In sum, Ambrose's defense theories relative to Count X were not entirely co-extensive with his defense theories relative to Count XI. To the extent time was billed for matters such as attorney-client conferences, discussions on case strategy, legal research, preparation of the motions to dismiss, analyzing Plaintiffs' response, and/or preparing for oral argument, it is not unreasonable on this record to assume that approximately one-half of counsels' time would have been devoted solely and exclusively to Ambrose's defense of the Section 1983 claim.[14]

Nevertheless, the Court will sustain Plaintiffs' objection insofar as the Special Master's recommended fee award included time billed for "fact-gathering work." Plaintiffs originally sought to exclude this item on the grounds that it was completely unnecessary for purposes of Ambrose's motions to dismiss and the issues subsequently raised on appeal. Plaintiffs reasoned that, because a Rule 12(b)(6) motion is adjudicated solely on the basis of the allegations in the claimants' pleading, any factual investigation was irrelevant to this phase of the defense. In his reply brief in support of his fee petition, Ambrose agreed to reduce his fee petition by excluding the amounts billed for the time counsel spent gathering facts about the Plaintiffs' claims.[15] In

---

[14] The Court also notes that Ambrose challenged Plaintiffs' original and amended complaints based on alleged violations of Federal Rule of Civil Procedure 8(d)(1). Had Plaintiffs only asserted a defamation claim against Ambrose, there would have been no basis for bringing the claim in federal court. Presumably, the claim would have been litigated in state court, and federal Rule 8(d)(1) would not have been implicated.

[15] Those charges, as set forth in the billing statements of Ambrose's counsel, are broken down as follows:

| Attorney | Hours | Rate | Totals |
|---|---|---|---|
| William Pietragallo, II | 2 | $375.00 | $750 |
| Robert R. Leight | 3.4 | $250.00 | $850 |
| Jeanette H. Ho | 8.1 | $200.00 | $1,620 |

making this concession, Ambrose acknowledged that these fees would have been incurred even in the absence of the frivolous §1983 claim. Despite Ambrose's concessions that he would eliminate these charges from his fee petition, it appears that the Special Master included them when calculating the number of compensable hours billed. In this Court's view, the time that counsel spent gathering facts should be excluded from any fee award, consistent with Ambrose's initial concession and the rule of *Fox*. The Court will therefore remove these hours from the lodestar calculation.

Based on the foregoing discussion, the Court finds that Ambrose's attorneys reasonably billed a total of 377.34 hours in defense of the §1983 claim at Count X. The Court further finds that this work would not have been performed but for the presence of the §1983 claim. These hours are broken down as follows:

| Attorney | Hours Reasonably Spent on Defense at the District Court Level | Hours Reasonably Spent Working on the Appeal | Hours Reasonably Spent Working on the Fee Petition | Total Number of Hours Reasonably Expended |
|---|---|---|---|---|
| William Pietragallo, II | 29.29 | 2.45 | .5 | 32.24 |
| Robert R. Leight | 28.8 | 1.6 | .7 | 31.1 |
| Jeanette H. Ho | 126.45 | 46.9 | 64.9 | 238.25 |
| Peter S. Wolff | 14.65 | 58.9 | 2.2 | 75.75 |
| **Total Hours** | **199.19** | **109.85** | **68.3** | **377.34** |

### 2. *Reasonable Hourly Rates for Ambrose's Attorneys*

Having determined the number of reasonable hours billed by Ambrose's counsel in defense of the frivolous §1983 claim, the Court must next determine the applicable billing rates. To calculate a reasonable hourly rate, the court must generally look to the prevailing market rate

| | | | |
|---|---|---|---|
| Peter S. Wolff | 3.1 | $200.00 | $620 |
| **TOTAL** | **16.6** | | **$3,840** |

in the relevant litigation forum.  *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.,* 726 F.3d 403, 413 (3d Cir. 2013).[16]  In determining the prevailing market rate, "a court must assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Loughner v. Univ. of Pittsburgh,* 260 F.3d 173, 180 (3d Cir. 2001) (internal quotation marks and citation omitted).

The prevailing party bears the burden of establishing counsels' reasonable rate.  *Public Interest Research Group of New Jersey, Inc. v. Windall,* 51 F.3d 1179, 1185 (3d Cir. 1995).  In doing so, counsel "may not rest on their own affidavits to support a claimed rate; rather, they must submit evidence that the requested rates fall within the norm of attorneys in the relevant community."  *I.W. v. School Dist. of Phila.,* Civil Action No. 14-3141, 2016 WL 147148, at *5 (E.D. Pa. Jan. 13, 2016) (citation omitted); *see also Washington v. Phila. Cnty. Court of Common Pleas,* 89 F.3d 1031, 1035 (3d Cir. 1996) ("The prevailing party bears the burden of establishing by way of satisfactory evidence, in addition to the attorney's own affidavits, that the requested hourly rates meet this standard.").

As Special Master Stroyd recognized, the applicable forum in this case is Erie/ Northwestern Pennsylvania, which would exclude the Pittsburgh legal market.  *See Buffington v. PEC Mgmt. II, LLP,* Civ. No. 1:11-cv-229 Erie, 2014 WL 670854, at *5 (W.D. Pa. Feb. 20, 2014) (Hon. Maurice B. Cohill concluding that Erie/Northwestern Pennsylvania was the relevant legal forum for an Erie case, as opposed to the Western District of Pennsylvania generally, and opining that "the two districts are separate and distinct in their legal markets and supporting resources and certainly have different economic situations").  Therefore, it was Ambrose's

---

[16] Two exceptions, not applicable here, exist where it can be shown either that there is a need for the special expertise of counsel from a distant district or that local counsel are unwilling to handle the case.  *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc*., 726 F.3d 403, 413 (3d Cir. 2013).

burden to establish that his counsels' billing rates were reasonable for the Erie/Northwestern Pennsylvania legal market; however, Ambrose failed to do so. In support of his fee petition, Ambrose submitted only the affidavits of his own attorneys and, moreover, he submitted these affidavits as evidence that the attorneys' billing rates were reasonable for the "Pittsburgh legal market." (ECF No. 197, ¶16.) Ambrose did not establish that the requested billing rates for his attorneys were reasonable market rates for the essential character and complexity of the services rendered in Erie/Northwestern Pennsylvania.

When a prevailing party does not satisfy his burden to produce satisfactory evidence of a reasonable hourly rate within the relevant legal forum, "the district court must exercise its discretion in fixing a reasonable hourly rate." *Washington,* 89 F.3d at 1036; *see also Loughner,* 260 F.3d at 180 ("Having rejected the prevailing party's evidence of rates, the District Court was free to affix an adjusted rate."). Here, Special Master Stroyd determined that a reasonable hourly rate for attorneys practicing in Erie would be in the range of $150 to $350. He then concluded that $350 would be a reasonable hourly rate for Mr. Pietragallo. Because this figure was approximately 93 percent (93%) of the rate that Ambrose had requested, Mr. Stroyd applied a proportionate reduction to the requested rates of Ambrose's other attorneys. He concluded that $232 (*i.e.,* 93% of $250) was a reasonable hourly fee for Mr. Leight, and $186 (*i.e.,* 93% of $200) was a reasonable hourly fee for Ms. Ho and Mr. Wolff.

Both Ambrose and Plaintiffs object to Mr. Stroyd's billing rate determination. Plaintiffs object to the use of a $350 hourly rate for Mr. Pietragallo, while Ambrose objects to Mr. Stroyd's proportionate reduction of the other attorneys' hourly rates.

Plaintiffs' objection is well-taken to the extent that Mr. Stroyd arrived at his fee assessment without any reference to the evidentiary record. "The matter of an attorney's

marketplace billing rate is a factual question." *Washington*, 89 F.3d at 1035. A district court "may not dispose of such a factual question 'based upon a generalized sense of what is customary or proper, but rather must rely upon the record.'" *Smith v. Phila. Housing Auth.,* 107 F.3d 223, 226 (3d Cir. 1997) (quoting *Coleman v. Kaye*, 87 F.3d 1491, 1510 (3d Cir. 1996)).

In this case, the only direct evidence concerning fee rates in the Erie/Northwestern Pennsylvania market comes from the fee petitions of the MTR Defendants and the Scott Defendants, insofar as these petitions include billing information for Erie-area practitioners. This evidence shows that two Erie lawyers, James T. Marnen, Esq. and Christopher J. Sinnott, Esq., served as local counsel for the MTR Defendants in connection with this litigation, and each billed their clients at $250 per hour, which was reportedly their customary rate. (*See* ECF No. 193-1 at Ex. 6, ¶¶ 6a and 6b.) Although the record does not expound on the credentials of these local attorneys, the court can attest to the fact that both Mr. Marnen and Mr. Sinnott are skilled litigators who are highly-regarded in the Erie legal community. Another prominent Erie lawyer, Ronald DiNicola, Esq., served as counsel to the Scott Defendants. The record reflects that Mr. DiNicola billed at the rate of either $275 or $220 per hour, depending on the nature of the services rendered. (ECF No. 192-1, Ex. B.) Like Messrs. Marnen and Sinnott, Mr. DiNicola is a well-regarded lawyer with considerable practical experience.

The record also reflects that Mr. Pietragallo is the managing partner of Pietragallo Gordon Alfano Bosick & Raspanti, LLP and has practiced law for over forty years. He has a number of professional credentials to his credit, as set forth in his affidavit. Mr. Pietragallo represents that, at the time his firm was retained in this case, Ambrose's insurer agreed to pay him $375 per hour, a fee lower than his normal hourly rate. The insurance carrier also agreed to retain Mr. Leight at a rate of $250 per hour and Ms. Ho and Mr. Wolff at a rate of $200 per hour,

respectively. Mr. Leight has practiced law since 1981, while Ms. Ho has practiced since 1991 and Mr. Wolff has practiced since 2008. Notably, in their response to Ambrose's fee petition, Plaintiffs acknowledged that "counsel for Defendant Ambrose have sought hourly rates ranging from $200 per hour to $325 per hour," and they conceded that "those rates below $275 per hour are reasonable for the Erie market." (Pls.' Resp. to Ambrose's Fee Pet. at 12, ECF No. 200.) The record also reflects that Plaintiffs did not object to Ms. Ho's hourly rate when Ambrose sought reimbursement for her fees in connection with an unsuccessful mediation session before Magistrate Judge Mitchell. (See Order dated April 17, 2014 at pp. 5-6 ECF No. 188; Ambrose Mot. for Attorney Fees, ECF Nos. 172; Ambrose Sealed Ex. A, ECF No. 178.)

Based on the available evidence of record, the Court agrees with Plaintiffs that a billing rate of $350 per hour is somewhat excessive for the Erie/Northwestern Pennsylvania market, particularly in light of the nature of this litigation. Although Plaintiffs' pleading was extremely lengthy and somewhat factually convoluted, the governing legal principles were relatively straightforward and did not depend upon novel or complex issues of law. At the same time, however, the Court recognizes that Mr. Pietragallo is an accomplished litigator of considerable skill and experience who, like Mr. Marnen, began practicing law over forty years ago. As discussed, Ambrose's insurance carrier agreed to pay Mr. Pietragallo $375 per hour for his services, and Mr. Pietragallo accepted this reduced rate as a courtesy to Ambrose. (ECF No. 197-4, ¶ 13.) As Ambrose notes, insurance carriers regularly hire outside counsel and are therefore presumably familiar with competitive market rates within the relevant fora. Consequently, the fact that Ambrose's insurance carrier agreed to pay Mr. Pietragallo $375 per hour in this case provides some support for a higher rate than was billed by the Erie attorneys in this case. In addition, a comparative analysis of the various rates charged by the Erie attorneys

in this litigation suggests that Mr. Marnen's billing rate was arguably lower than it could have been, given his considerable reputation, skill, and litigation experience.

In light of all the foregoing considerations, the Court finds that $300 per hour is an appropriate hourly rate for Mr. Pietragallo, based on his level of skill, his reputation, his experience, and the nature of this litigation. Further, this rate is generally in line with the range of hourly fees that have recently been awarded to experienced counsel in other cases within this forum. *See, e.g., Buffington,* 2014 WL 670854, at *6 (finding that reasonable attorney fee rate was $300 per hour in a disability discrimination case); *Meyers v. Penn N. Centers for Advanced Wound Care, P.C.*, No. CIV. 11-182 ERIE, 2014 WL 3535550, at *12 (W.D. Pa. July 16, 2014) (reasonable hourly rate was $275 for experienced and skilled litigator who successfully prosecuted a non-complex Wage Payment and Collection Law claim); *United Refining Co. Incentive Sav. Plan v. Morrison,* Civil Action No. 1:12-CV-238, 2014 WL 126004, at *4 (W.D. Pa. Jan. 10, 2014) (finding, based on billing rates of local attorneys, that $250 was a reasonable hourly rate for counsel in an unsophisticated interpleader action). Although these cases are by no means identical to the case at bar, they at least provide some basic measure of guidance as to the prevailing market rate for legal fees in this forum. *See Mitchell v. City of Phila.,* No. 99-6306, 2010 WL 1370863, at *14 (E.D. Pa. Apr. 5, 2010) (noting that, in cases where the fee movant has no customary rate, the prevailing market rate can be established from other sources, including, e.g., "the amounts awarded counsel with similar experience in similar litigation") (quoting 10 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶54.190 (3d ed. 2009)) (internal quotation marks omitted).

Having determined Mr. Pietragallo's reasonable hourly rate within this forum, the Court must next determine the appropriate rates for his co-counsel. In making this calculation, Special

Master Stroyd first determined the percentage by which it had reduced Mr. Pietragallo's hourly fee (i.e., 7%) and then applied a proportionate reduction to the requested hourly fees of Attorneys Leight, Ho, and Wolff. Ambrose argues that the hourly rates of Attorneys Leight, Ho, and Wolff should not have been reduced by Special Master Stroyd because Plaintiffs never contested their billing rates and even conceded that hourly rates below $275 were reasonable for the Erie market. Ambrose further objects that Special Master Stroyd's reduction of the requested billing rates for Attorneys Leight, Ho, and Wolff resulted in these lawyers receiving a lower hourly fee than certain of MTR's attorneys, who were less experienced.

Based on the available evidence of record as outlined above, the Court is satisfied that a rate of $250 per hour for Mr. Leight and $200 per hour for Ms. Ho are reasonable for the Erie/Northwest Pennsylvania market in light of counsels' respective skill and experience and the nature of this litigation. Mr. Wolff, on the other hand, is a less experienced litigator than either Mr. Leight or Ms. Ho, having earned his law degree in 2008. Most of the time that he billed in this case was for work performed in 2011 or 2012, when he had been practicing law for only 3 to 4 years. The Court finds that an hourly billing rate of $175 is reasonable for Mr. Wolff and consistent with the billing rate of other similarly situated lawyers within this forum.

Applying the aforementioned hourly rates to the number of hours reasonably billed yields a lodestar amount of $78,353.25. This amount can be broken down for each of Ambrose's attorneys as follows:

| Attorney | Hours | Rate | Totals |
|---|---|---|---|
| William Pietragallo, II | 32.24 | $300.00 | $9,672.00 |
| Robert R. Leight | 31.1 | $250.00 | $7,775.00 |
| Jeanette H. Ho | 238.25 | $200.00 | $47,650.00 |

| Peter S. Wolff | 75.75 | $175.00 | $13,256.25 |
|---|---|---|---|
| **TOTAL** | **377.34** | | **$78,353.25** |

### 3. Reduction of Lodestar

Although the lodestar figure represents the presumptively reasonable fee, a district court retains discretion to adjust that figure upward or downward upon proof that an adjustment is appropriate. *See Lanni,* 259 F.3d at 149. In this case, Special Master Stroyd indicated that whether the Defendants posed a "real threat of harm" to Plaintiffs was a factor that might affect his determination as to the propriety of any fee award. *See Barnes Fd. v. Twp. of Lower Merion,* 242 F.3d 151, 158 (3d Cir. 2001); *see also* R&R dated May 1, 2014 at ¶¶ 46(e) and 49(e) (ECF No. 131). Plaintiffs object to the fact that Special Master Stroyd ultimately declined to recommend a downward departure from the lodestar on this basis.

The Court will overrule Plaintiffs' objection, as it is not persuaded that Special Master Stroyd committed error in this respect. The underpinning of Plaintiffs' argument is that Ambrose posed a real threat of injury to them insofar as he provided allegedly defamatory information about them to Thomas Brletic, an agent with the Pennsylvania Gaming Commission's Bureau of Investigations and Enforcement. In support of these allegations, they supplied portions of Brletic's deposition testimony. The upshot of Plaintiffs' theory is that: (a) Ambrose falsely informed Brletic that Rubino had been an unindicted co-conspirator in a large drug investigation in the 1980s; (b) Ambrose supplied Brletic with certain business records for Rubino's business that had been stolen by a former employee; and (c) Ambrose falsely represented to Brletic that the record demonstrated Arneault's use of Rubino's company as a conduit that funneled payments to an individual named Charles Sack.

The Court has thoroughly reviewed the record insofar as it pertains to Plaintiffs' assertion that Ambrose posed a real threat of injury to them. (*See* ECF Nos. 190, 191, 195, 200, 202, 207, and 212, 214.) It bears repeating that the parties' fee dispute is occurring in the context of a determination that Plaintiffs frivolously alleged that Ambrose violated their federal constitutional rights by conspiring with government gaming officials to deprive Plaintiffs of their due process rights and/or to retaliate against the Plaintiffs for engaging in protected speech/conduct. Having reviewed all of the evidence and the parties' respective arguments on the matter, the Court is not persuaded that the evidence demonstrates a real threat of constitutional injury as would justify Plaintiffs' assertion of their §1983 conspiracy claim against Ambrose or warrant a reduction of the lodestar figure. Accordingly, the Court will award Ambrose $78,353.25 in counsel fees and $1,408.47 in costs.

C. The Scott Defendants' Petition for Counsel Fees

In their fee petition, the Scott Defendants sought to collect $79,726.98 of the $96,820.00 that their counsel, Ronald DiNicola, Esq., had billed from the inception of this case up to the time of the fee petition. The Special Master ultimately recommended that the Scott Defendants be awarded $48,410.00.

In arriving at this figure, Special Master Stroyd implicitly utilized the total amount billed – *i.e.*, $96,820.00 – as the lodestar figure. He determined that "Ronald DiNicola, who practices in the Erie/Northwest Pennsylvania community, was the only attorney from his firm working on behalf of the Scott Defendants in this case, and his hourly rate of $275 is reasonable for that market and will not be adjusted." (R&R ¶135.) Mr. Stroyd then went on to state that he had thoroughly reviewed the redacted time reports submitted by Mr. DiNicola and found that they reflected "reasonably expended time representing [the Scott] Defendants" inasmuch as

"excessive, redundant, or otherwise unnecessary charges had been excluded." (*Id.* ¶136.) With regard to the parties' prior efforts to mediate the attorneys' fees claims, the Special Master concluded that "time attributable to the mediation that Judge Mitchell conducted has not been included." (*Id.* ¶137.) He considered the amounts that Mr. DiNicola billed in connection with Plaintiffs' appeal to be "appropriate." (*Id.* ¶141.) He also approved the hours that defense counsel had billed for investigating the facts of the case on the grounds that such work was necessary, appropriate, and prudent. (*Id.* ¶¶142-145.)

After implicitly accepting the $96,820 figure as an appropriate lodestar, Special Master Stroyd considered whether adjustments should be made. He rejected Plaintiffs' argument that they had acted in good faith and/or out of a concern for a "real threat of injury" in asserting their §1983 conspiracy claim. (R&R ¶149.) He applied the "but for" test of *Fox v. Vice* as follows:

> 153. Counsel for the Scott Defendants estimate[s] that 82.3% ($79,726.98÷96,820) of his time was spent in defending against the claims in this lawsuit that would not have been spent in the absence of the frivolous claims in Count X (Doc No 197).[17]

> 154. That calculation, however, does not conform with this independent, objective analysis of those time entries, which concludes that approximately 50% of the total fees of $96,820 would have been incurred in the absence of the frivolous civil rights claims and that approximately 50% of the fees are attributable to additional costs that are associated with the unreasonable, frivolous civil rights claims against the Scott Defendants.

> 155. After allocating the remaining fees between time that was spent on the frivolous claims of Count X and the other claims, the undersigned calculates that $48,410.00 should be reimbursed to the Scott Defendants by Plaintiffs Arneault and Rubino.

(R&R at ¶¶153-155.)

The Scott Defendants' sole objection relates to Special Master Stroyd's finding that only fifty percent (50%) of the total fees were attributable to their defense of the frivolous civil rights

---

[17] It appears the appropriate reference is to Document No. 192.

claim. Plaintiffs, on the other hand, assert numerous objections to the Report and Recommendation. They claim that Mr. Stroyd erred by: (i) failing to calculate the number of hours that the Scott Defendants' counsel spent working on the case, (ii) failing to exclude fees and costs that had previously been awarded to the Scott Defendants in connection with an unsuccessful mediation before United States Magistrate Judge Robert Mitchell; (iii) failing to exclude the fees that the Scott Defendants incurred as a result of their "unnecessary" participation in the appellate proceedings; (iv) failing to exclude amounts billed in connection with "unnecessary" fact gathering work; (v) failing to properly limit the fee award in accordance with *Fox v. Vice*; and (vi) failing to reduce the lodestar figure based on the "real threat of injury" that the Defendants' conduct posed.

This Court has thoroughly reviewed the original fee petition (ECF No. 192), the Plaintiffs' response thereto (ECF No. 201), the Scott Defendants' reply (ECF No. 205), and all of the parties' related exhibits, including the disputed billing records. The Court has also thoroughly reviewed the Report and Recommendation (ECF No. 207) as well as the parties' various objections, responses, and replies thereto (ECF Nos. 210, 212, 215, 216, and 220). Finally, the Court has reviewed pertinent parts of both the District Court and appellate court records, including the Amended Complaint and the parties' respective briefs before both the District Court and the U.S. Court of Appeals for the Third Circuit. After conducting this review, the undersigned finds that certain of the parties' objections are well-taken, as discussed below.

   1.   *Hours Reasonably Expended By Counsel*

      (a) FAILURE TO CALCULATE THE AMOUNT OF HOURS REASONABLY BILLED

As an initial point, this Court agrees that Special Master Stroyd strayed from the usual lodestar methodology by failing to calculate the number of hours reasonably expended by the

Scott Defendants' counsel. Although Mr. Stroyd examined the underlying billing records and generally found counsels' expenditure of time to be reasonable, he did not specify the number of hours reasonably billed by Mr. DiNicola in connection with his defense of this case. Instead, as noted, Mr. Stroyd implicitly utilized counsel's aggregate billing figure as the relevant lodestar figure. This was likely due to the fact that the Scott Defendants themselves offered no proposed lodestar calculation in their fee petition; instead, they simply appended copies of their invoices to their petition and then requested a full reimbursement of their "adjusted" billing amounts without specifying the number of hours involved, the applicable billing rates, or the portion of the bill that pertained to fees as opposed to costs. Because Mr. DiNicola billed the Scott Defendants at two different rates depending on the nature of his activities, the number of hours he expended is not readily calculable from the billing summary attached to the Scott Defendants' fee petition. *See* ECF No. 192-1 at p. 2. Moreover, because Mr. Stroyd calculated his fee award based on the aggregate figures set forth in the billing summary, his award failed to break down the portion that was attributable to costs and the portion attributable to fees, thereby further complicating this Court's efforts to ascertain the underlying lodestar components.[18] This Court's lodestar analysis is further complicated by the fact that, in utilizing the amounts "billed" to the Scott Defendants rather than the lesser "adjusted amount[s] sought," Special Master Stroyd inadvertently incorporated into the lodestar certain charges which the Scott Defendants themselves sought to exclude from their fee petition.

Under these circumstances, this Court is of the view that, even though the Special Master found Mr. DiNicola's billing to be generally "reasonable," his lodestar calculation did not

---

[18] Since the relevant billing records were attached to the petition, this Court conducted a detailed, de novo review of those records. In doing so, the Court was able to ascertain that the requested award of $79,726.98 appears to consist of $2,106.98 in costs and 77,620.00 in fees.

sufficiently comply with the methodology prescribed by the U.S. Court of Appeals for the Third Circuit. This Court will attempt to rectify that problem in the analysis laid out below.

(b) FAILURE TO EXCLUDE AMOUNTS PREVIOUSLY AWARDED

As a secondary point, the Court agrees with Plaintiffs that the Special Master's fee award indirectly incorporated at least a portion of the fees and costs that were previously awarded to the Scott Defendants by Magistrate Judge Mitchell in connection with the parties' failed mediation on March 20, 2014. (*See* ECF Nos. 164 and 188). Notably, the instant fee petition sought to avoid any duplicity in this regard by backing out $2,544.71 from the fee request, which represented fees and costs previously awarded by Magistrate Judge Mitchell. However, in utilizing the $96,820.00 billing figure (rather than the "adjusted" $79,726.98 figure) as the relevant "lodestar" amount, Special Master Stroyd inadvertently placed Magistrate Judge Mitchell's prior award back *into* the equation, because the $79,726.98 figure purposefully excluded the amounts previously awarded by Magistrate Judge Mitchell, while the $96,820.00 figure did not. Although Mr. Stroyd ultimately halved the $96,820.00 "lodestar" figure, his award necessarily incorporated at least a portion of the fees and costs that had previously been awarded by Magistrate Judge Mitchell -- as well as other billed amounts that the Scott Defendants were not even seeking to recover. Accordingly, adjustments must be made for this error.[19]

(c) FAILING TO EXCLUDE TIME SPENT WORKING ON PLAINTIFFS' APPEAL

Plaintiffs argue that the fee award should exclude all of the time billed by the Scott Defendants' counsel in connection with the appellate proceedings because, in Plaintiffs'

_____

[19] Plaintiffs object that this error calls into question Mr. Stroyd's credibility, objectivity, and competence. The Court perceives no need to jump to such conclusions but, in any event, the point is rendered moot by the fact that the undersigned is reviewing the fee petitions on a *de novo* basis and conducting an independent analysis in order to remedy the aforementioned error.

judgment, it was unnecessary for the Scott Defendants to participate in the appeal. This objection lacks merit and will be rejected.

Insofar as Plaintiffs sought, through their appeal, to reverse the dismissal of Count X and/or to replead that claim, the Scott Defendants' legal interests were directly implicated and it was reasonable for them to participate in the appellate proceedings in order to oppose Plaintiffs' position. To that end, the Scott Defendants argued that Plaintiffs had waived any claim of error relative to the dismissal of Count X. Alternatively, they argued that the claim had been properly dismissed under the pleading standards of *Twombly*. Moreover, for reasons previously discussed, it was reasonable for the Scott Defendants to appear in the appellate proceedings through their own counsel rather than rely on the government Defendants' attorneys to represent their interests. Because the Scott Defendants' alleged liability was premised on the conduct of Ambrose acting as their "agent," the Scott Defendants had additional arguments in defense of Count X that the other Defendants could not assert. Specifically, the Scott Defendants argued that the conspiracy claim against them was inappropriately based on a theory of *respondeat superior* and/or could not survive if the Court of Appeals affirmed the dismissal of similar claims directed at the "upstream Defendants." In sum, the Scott Defendants' participation in the appeal through their own independent counsel was reasonable and appropriate, and the fees they incurred in connection with those proceedings will be included in their fee award.

(d) FAILING TO EXCLUDE TIME SPENT GATHERING FACTS

Plaintiffs also object to the Report and Recommendation to the extent Mr. Stroyd recommended awarding counsel fees for "fact-gathering" work. Given that Plaintiffs' claims were challenged and ultimately disposed of pursuant to Rule 12(b)(6), Plaintiffs contend that no fact-gathering work was needed in order for the Scott Defendants' to file their Motion to

Dismiss, participate in the appeal, or litigate the instant fee petition. By Plaintiffs' estimate, approximately 25 hours of legal work were billed to the Scott Defendants for "fact-gathering work."[20]

The Court is not persuaded that fact-gathering work was unnecessary or unreasonable. Like Mr. Stroyd, the undersigned believes that "it was prudent for these Defendants' counsel to investigate, with a possible goal of developing alternative theories for dismissal at the initial stages of pleading or at a later juncture." (R&R ¶143.)

On the other hand, given the factual overlap between the conspiracy claim at Count X and the defamation claim at Count XI, the Court finds that time expended by counsel in "fact gathering" would likely have occurred even in the absence of the §1983 claim at Count X. Accordingly, the fees in question will be excluded pursuant to the rule of *Fox v. Vice*, as discussed below.

(e) APPLICATION OF *FOX V. VICE*

In accordance with *Fox v. Vice,* this Court must ensure that any fee award is limited to those attorney's fees that would not have been incurred "but for" the existence of the frivolous §1983 claim. Consistent with this rule, the undersigned concludes that the Scott Defendants are entitled to recover all of the fees they reasonably incurred relative to their participation in the appellate proceedings. By this Court's calculation, those fees amount to $13,260.50,[21] broken down as follows:

| Attorney | Hours | Rate | Totals |
|---|---|---|---|
| Ronald A. DiNicola | 59.9 | $220.00 | $13,178.00 |

---

[20] Mr. DiNicola's billing rate for this work was $275 per hour, and the total fees amounted to $6,875.00. (*See* Pls.' Opposition to Scott Defs.' Fee Petition at Ex. E, ECF No. 201-5.)

[21] This figure includes all of the hours highlighted on Exhibit D to Plaintiffs' response in opposition to the Scott Defendants' fee petition (ECF No. 201-4), plus .3 hours billed on February 18, 2013, which this Court views as work related to the appellate proceedings. (*See* ECF No. 192-1 at p. 63.)

| | | | |
|---|---|---|---|
| Ronald A. DiNicola | .3 | $275.00 | $82.50 |
| **TOTAL** | **60.2** | | **$13,260.50** |

In addition, the undersigned concludes that the Scott Defendants are entitled to recover all of the fees reasonably incurred in connection with their litigation of the instant fee petition, except for the $1,716.00 that Magistrate Judge Mitchell previously awarded. Excluding that amount, by this Court's calculation the Scott Defendants reasonably incurred $8,822.00 in fees[22] as a result of litigating the instant fee petition. These fees can be broken down as follows:

| Attorney | Hours | Rate | Totals |
|---|---|---|---|
| Ronald A. DiNicola | 39.1 | $220.00 | $8,602.00 |
| Ronald A. DiNicola | .8 | $275.00 | $220.00 |
| **TOTAL** | **39.9** | | **$8,822.00** |

The remainder of the Scott Defendants' fee petition relates to work performed in defense of Counts X and XI at the District Court level. As discussed above, the Court will exclude twenty-five (25) hours of work that the Scott Defendants' counsel spent investigating the Plaintiffs' factual averments. This adjustment is warranted in light of the common factual underpinnings of the defamation and conspiracy claims. Because both claims stemmed from statements that the Scott Defendants' then attorney, Leonard Ambrose, allegedly made to gaming officials, an investigation into the nature and timing of these statements, as well as their impact, if any, on Plaintiffs' involvement in the gaming industry, would have been relevant and necessary for both Counts X and XI.

Although not strictly a *Fox v. Vice* issue, the Court will also exclude nine (9) hours of work that were apparently billed by another attorney within Mr. DiNicola's law firm -- specifically, Douglas W. Bordewieck. (*See* ECF No. 192-1 at pp. 7-8.) The undersigned's

---

[22] This figure includes most of the hours billed between May 10, 2013 and March 31, 2014 as well as .8 hours billed by Mr. DiNicola on April 11, 2012. (*See* ECF No. 192-1 at pp. 45, 65-84.)

examination of the billing records suggests that the Scott Defendants attempted to excise Mr. Bordewieck's hours from their fee petition; however, they inadvertently failed to exclude nine of Mr. Bordewieck's hours, as set forth in counsels' May 5, 2011 invoice. (*Id.*)[23] The hours appear to be duplicative of work performed by lead counsel, Mr. DiNicola, and they are therefore appropriately excluded.

The remainder of the time billed at the District Court level amounts to approximately 167.2 hours. Apart from Mr. Bordewieck's hours, the Court agrees with Mr. Stroyd that, as a general matter, the billing records reflect time that was reasonably expended in defense of Counts X and XI; the hours of work performed by Mr. DiNicola do not appear to be excessive, redundant, or otherwise unnecessary.

Nevertheless, virtually all of Mr. DiNicola's work at the District Court level has been challenged by Plaintiffs on the grounds that the fees involved would have been incurred even in the absence of the frivolous §1983 conspiracy claim. Thus, a question arises as to how the Court should apply the rule of *Fox v. Vice*.

Not surprisingly, the parties have differing interpretations of the rule. The Scott Defendants contend that they are entitled to recover the "majority of the fees expended in this action," (Objections ¶6, ECF No. 210), based on the following considerations:

(a) Federal jurisdiction over the Amended Complaint was based upon the federal question posed by the frivolous section 1983 claim.[ ] Thus, the Scott Defendants' legal defense was focused largely on the section 1983 claim, the dismissal of which eliminated a basis for pendent jurisdiction over the state law claim. Accordingly, "but for" the frivolous section 1983 claim, the action as pled was unsustainable and there would have been no fees expended in connection with the non-frivolous claim.

---

[23] The Court infers that the hours billed on April 22, 24, and 25, 2011 are attributable to work performed by Mr. Bordewieck because, for each billing entry on those dates, the amount of the charge, when divided by the number of hours worked, reflects a billing rate of $225 per hour. According to the invoice, Mr. Bordewieck billed at an hourly rate of $225, while Mr. DiNicola's hourly rate was $275.

(b) The section 1983 claim was far and away the primary thrust of the Amended Compliant [sic].  For example, of the first one hundred and one (101) pages (¶¶1-347) of Plaintiffs' Amended Complaint focusing on the legal and factual background for the action, one hundred pages (¶¶1-344) are devoted to the section 1983 conspiracy allegations, while a single page (¶¶345-347) addresses the defamation claim.[ ]  Likewise, the Scott Defendants' motion to dismiss the Amended Complaint was focused largely upon the dismissal of the section 1983 claim (Count X). . . .

(c) In the Memorandum Opinion and Order of March 28, 2012 ..., the District Court devoted all but one (1) of the seventy-eight (78) pages of the Memorandum Opinion to Plaintiffs' section 1983 claims and the phalanx of arguments made to sustain their dismissal without leave to amend.... The District Court summarily refused to permit the case to proceed on the basis of the non-frivolous state law claims.

(d) The Third Circuit addressed the deficiencies of the federal claims, sustained the District Court order of dismissal and denied Plaintiffs an opportunity to amend.... The Third Circuit did not address the state law claims....

(Objections of Scott Defs. to Report of Special Master Regarding Award of Attorney's Fees ¶5, ECF No. 210 (internal citations and footnotes omitted).)

Plaintiffs argue, and this Court agrees, that the Scott Defendants' position misapprehends the rule of *Fox v. Vice*.  In *Fox,* as here, the court was confronted with a frivolous federal claim, for which fees were awarded, and a non-frivolous state law claim that had been dismissed by a federal judge without prejudice so that it might be pursued in state court.  The Supreme Court made clear in *Fox* that the dispositive consideration in awarding fees was not the parties' "focus" in the litigation, 563 U.S. at 839, but the extent to which "the costs would have been incurred in the absence of the frivolous allegation." *Id.* at 838.  Accordingly, the number of paragraphs that Plaintiffs devoted to their §1983 claims in their pleadings, the number of pages in the District Court's Rule 12(b)(6) ruling that were devoted to a discussion of the §1983 claims, and the extent to which the Court of Appeals focused on the §1983 as opposed to the defamation claim are not dispositive considerations.  Furthermore, in applying *Fox*'s "but for" allocation test, the

Court will not assume, as the Scott Defendants appear to do, that Plaintiffs would have attempted to prosecute their defamation claims in federal court, even in the absence of their §1983 claims. Based on their flawed assumption, the Scott Defendants erroneously conclude that a dismissal of the defamation claim from federal court would have been easily obtained absent the presence of the federal §1983 conspiracy claim and, therefore, virtually all of the fees charged in this case are solely and exclusively attributable to the §1983 conspiracy claim.

Instead, this Court will allocate fees based on an assumption that, absent the §1983 conspiracy claim, Plaintiffs would have sued the Scott Defendants in state court, and – notwithstanding the absence of a §1983 claim -- certain of the legal tasks performed in this federal litigation (or analogous tasks) would have been performed in defense of a properly filed state court defamation action. Plaintiffs appear to utilize this same assumption and, to that end, they have provided a line-item assessment of the work performed by Mr. DiNicola that they believe counsel would have been required to perform even if the §1983 claim had never been filed. In total, Plaintiffs have identified 272.1 hours of legal work that they believe the Scott Defendants would have incurred even if the federal conspiracy claim had not been asserted. (*See* Doc. 201 at p. 6 and 201-1.)

Having carefully reviewed the billing records at issue as well as the District Court record, the Court concludes that Plaintiffs' assessment of excludable legal work is overly broad. While there is factual overlap between the defamation and conspiracy claims, this has been adequately accounted for by exclusion of counsel's fact-gathering work. From a legal perspective, the two claims were not identical. For the reasons discussed above in relation to Ambrose's fee petition, this Court can utilize its "sense of the suit" to achieve a rough approximation of the extent to which the added §1983 claim drove up legal expenses for the Scott Defendants.

Based on this Court's careful and independent review of the record, as well as its sense of the underlying lawsuit, the Court concludes that approximately fifty percent (50%) of the fees that Mr. DiNicola billed for defense work at the District Court level are solely and exclusively attributable to the presence of the §1983 conspiracy claim.

### (f)  The Court's Calculation of Hours Reasonably Billed

In light of all the foregoing considerations, this Court concludes that 83.6 hours (*i.e.*, ½ of 167.2 hours) were reasonably billed by Mr. DiNicola in connection with his defense of Count X at the District Court Level.  In addition, 60.2 hours were reasonably billed by Mr. DiNicola in connection with the appellate proceedings.  Finally, 39.9 hours were reasonably billed in connection with the Scott Defendants' litigation of the instant fee petition.   All of the foregoing hours would not have been incurred but for the existence of the frivolous conspiracy claim at Count X of the Amended Complaint.

### 2.  *Reasonable Hourly Billing Rate*

Having determined the amount of hours reasonably expended by counsel relative to Count X, the Court must next determine a reasonable hourly fee.  The underlying billing records indicate that Mr. DiNicola generally billed the Scott Defendants at a rate of $275 for work performed at the District Court Level.  He generally billed at a rate of $220 for work performed in connection with Plaintiffs' appeal and in litigating the instant fee petition.  No challenge has been made to Mr. DiNicola's billing rate, and the Court finds that both rates are reasonable.

### 3.  *Lodestar Calculation and Possible Adjustments*

In light of the foregoing discussion the Court finds that the relevant lodestar figure for the Scott Defendants' counsel is $45,072.50.  This figure is broken down as follows:

| Type of Work | Hours | Rate | Totals |
|---|---|---|---|
| District Court | 83.6 | $275.00 | $22,990.00 |
| Appeal Work | 59.9 | $220.00 | $13,178.00 |
| Appeal Work | .3 | $275.00 | $82.50 |
| Fee Petition | 39.1 | $220.00 | $8,602.00 |
| Fee Petition | .8 | $275.00 | $220.00 |
| **TOTAL** | **183.7** | | **$45,072.50** |

Plaintiffs contend that the lodestar figure should be reduced based on their "good faith" in bringing this lawsuit and the "real threat of injury" that the Scott Defendants posed. The Court is not persuaded that such a reduction is warranted. Here, Plaintiffs' claim against the Scott Defendants was premised entirely upon the conduct of Ambrose, who supposedly acted as their agent in allegedly conspiring with gaming officials to deprive Plaintiffs of their federal rights. In this respect, Plaintiffs' §1983 theory of liability was even more tenuous as to the Scott Defendants than it was with respect to Ambrose. Having thoroughly reviewed the record, the Court finds that Plaintiffs have not demonstrated injury or deprivation of a constitutional magnitude – or any threat thereof -- as a result of the Scott Defendants' conduct. *See Le Beau v. Libbey-Owens-Ford Co.*, 799 F.2d 1152, 1158-59 & n.8 (7th Cir. 1986). Accordingly, the Court finds no basis that would justify a denial of attorneys' fees or a reduction of the lodestar figure.

*4. Award of Costs*

The Scott Defendants' petition incorporates a request for certain costs; however, that figure has not been broken out in their petition. After a thorough review of the underlying billing records, the Court has been able to calculate that their requested award includes $2,106.98 in costs. This figure – taken from the "Adjusted Amount Sought" in the Scott Defendants' billing summary -- does *not* include the $828.71 in costs that was previously awarded by Magistrate

Judge Mitchell.  Plaintiffs have expressed no objection to the $2,106.98 figure, and those costs will therefore be awarded.

## IV. <u>CONCLUSION</u>

For the reasons stated above, the Court adopts the Special Master's Final Report and Recommendation, subject to modification, to the extent stated herein.  Defendant Ambrose is awarded $78,353.25 in counsel fees and $1,408.47 in costs.  Defendants Nicholas C. Scott and Scott's Bayfront Development, Inc. are awarded $45,072.50 in attorneys' fees and $2,106.98 in costs.

<u>/s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  December 2, 2016